UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
VINCENT MERLO,

                      Plaintiff,

-against-

UNITED STATES OF AMERICA and
UNITED STATES POSTAL SERVICE,

                      Defendants.
-------------------------------------------------------X

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

CV 14-935 (LDW) (AKT)

WEXLER, District Judge

      Plaintiff Vincent Merlo ("Merlo") brings this personal injury action against defendant United States of America claiming that he slipped and fell in the parking lot of a post office in Centerport, New York (the "Centerport Post Office" or "post office"). The following are the Court's findings of fact and conclusions of law following a bench trial on liability only.

## I. FINDINGS OF FACT

      On Friday, February 8, 2013 and Saturday, February 9, 2013, a blizzard struck Long Island. Trial Transcript ("Tr.") 105-09. As a result, New York Governor Andrew Cuomo declared a state of emergency for Suffolk County. Tr. 115.

      Before the blizzard began, there was no snow or ice on the Centerport Post Office parking lot. Tr. 106. Approximately 13 inches of snow and ice fell in the area encompassing the post office on February 8, and an additional 8.5 inches of snow fell there before the blizzard ended around 9:30 a.m. on February 9. Tr. 107-09. The blizzard forced the closure of the post office on February 9, normally a day of postal operations. Tr. 30-31.

      During the blizzard, on February 8, Merlo parked a car at the Centerport Post Office and

walked to the house he rented with his girlfriend, Karen Buonpane ("Buonpane"), at 11 Center Shore Road, Centerport, New York. Tr. 51, 65, 81. The house, located approximately 1000 feet from the south end of the post office, is owned by Merlo's landlord, Douglas Esposit ("Esposit"). Tr. 6; 65. Although the house has a driveway with parking for Esposit's tenants, Merlo and Buonpane parked their cars at the Centerport Post Office during inclement weather so that Esposit could more easily clear snow from the driveway. Tr. 53-54, 70. Merlo testified that "[n]ormally, if there is a big snowstorm I'd ask Dean or Rodney . . . if it is okay to leave my car [in the post office parking lot]." Tr. 70. Merlo testified that he asked Dean Parenti ("Parenti") for permission to park his car in the post office parking lot before the February 2013 blizzard, supposedly obtaining permission. Tr. 79-80. Although Merlo testified that he was never told that he could not park in the lot during a storm, Tr. 78, Parenti testified that he told Merlo, "you cannot park your car overnight." Tr. 140. Nevertheless, there was no evidence that these postal employees were authorized to grant such permission. Nor was there evidence that Merlo was told to remove his car.

William Grace ("Postmaster Grace") was the postmaster of the Centerport Post Office in February 2013. Tr. 24. Postmaster Grace's duties included overseeing postal operations at the post office. Tr. 24-25. His duties also included hiring independent contractors for various tasks, including snow removal. Tr. 25.

Postmaster Grace hired David McGovern and David McGovern Landscapes (collectively, "McGovern") to perform snow removal services at the Centerport Post Office, and McGovern was the contractor during February 2013. Tr. 25-26, 121-22. Postmaster Grace did not enter into a written contract with McGovern because the anticipated expenditure was below the Postal

Service's $10,000 threshold. Tr. 25, 122. McGovern's procedure was to begin plowing at the post office once snow accumulated two inches. Tr. 26. Postmaster Grace's practice was to inspect the post office parking lot after McGovern completed its work and to call McGovern to return if additional snow/ice removal work was required. Tr. 26-27.

McGovern began plowing snow at the Centerport Post Office, including the public parking lot, on Friday, February 8. Tr. 127. McGovern continued removing snow into Saturday, February 9, but was interrupted when the snow plow broke down. Tr. 132. As a result, McGovern did not finish clearing snow and ice from the public parking lot; instead, McGovern did much of the work that day with a "bobcat machine," concentrating on the loading dock area. Tr. 128, 132. McGovern did not apply sand or salt to the parking lot that day, purportedly because the post office was closed that day and would be closed the next day, Sunday. Tr. 135. McGovern returned to the post office sometime in the afternoon on Sunday, February 10 to continue removal activities. Tr. 132-34.

Meanwhile, sometime between 11:00 a.m. and 11:30 a.m. on Sunday, February 10, Merlo walked from the 11 Center Shore Road house to the Centerport Post Office, claiming he went there mainly to shovel out his car, but also to mail some letters. Tr. 71-72, 83. The post office was closed that day, Tr. 31, but the public parking lot and postal collection boxes remained accessible to the public. Tr. 45-47. Once at the parking lot, Merlo noticed that the parking lot had been plowed. Tr. 72. While carrying a shovel and letters, Merlo proceeded to walk on an incline toward the postal collection boxes, which were located outside the post office building against a wall underneath an awning. Tr. 73-75. Merlo observed that he was walking on ice, but claims that he "was walking on the ice very carefully" Tr. 75. He testified that he slipped and

fell "trying to get to the mailbox, and my leg just twisted and I went down." Tr.75. As he lay on the ground, he observed that the ice was "shiny and smooth" and he noticed no salt or sand in the parking lot. Tr. 75. Merlo lay on the post office parking lot for 30 minutes before a woman passing by noticed him. Tr. 76. The woman happened to be an acquaintance of Esposit; she notified Esposit, who was at the house that day overseeing snow removal from the driveway, that his tenant—Merlo—had fallen at the post office. Tr. 8, 11, 20.

Thereafter, Esposit and Buonpane walked to the post office to check on Merlo. Tr. 11, 20, 57. As Esposit entered the post office property, he observed that the parking lot had been plowed and that a layer of ice was on the surface, "maybe half an inch." Tr. 12, 20-21. He did not see any sand or salt on the parking lot. Tr. 13, 21. Buonpane observed that the parking lot had been plowed but was "very icy on the top." Tr. 58. She further observed no sign of sand on the parking lot. Tr. 58. Esposit called 911 at 12:14 p.m. Tr. 16-17. Neither Esposit nor Buonpane took photos of the icy condition at the post office that day. Tr. 21-22, 62.

Upon returning to the Centerport Post Office sometime in the afternoon on Sunday, February 10, McGovern continued snow removal activities, including in the public parking lot. Tr. 132-35. Once the public parking lot was cleared, McGovern applied a salt/sand mixture to the parking lot. Tr. 128-29.

Ultimately, McGovern billed Centerport Post Office $1,910 for snow removal and $525 for three salt/sand applications ($175 per application) for the February 2013 blizzard. Tr. 123, 131. On Monday, February 11, Postmaster Grace inspected the parking lot and found that it had been plowed and treated with sand/salt. Tr. 31-32.

James V. Bria, III, C.C.M. ("Bria") testified as Merlo's forensic meteorologist. Bria

confirmed that snow began at 6:30 a.m. on Friday, February 8, but that "[t]here was no snow or ice cover from preexisting events on the ground." Tr. 106-07. He testified that snow fell that day from 6:30 a.m. to 9:30 a.m., followed by rain, sleet, and snow from 9:30 a.m. to 2:30 p.m., resulting in the rain seeping through the "fresh snow" and freezing to ice on the ground below. Tr. 108. Bria opined that the failure to "completely" remove the snow and ice down to the pavement left the parking lot in a more dangerous condition than if the snow had not been removed. Tr. 113-14.

## II. DISCUSSION AND CONCLUSIONS OF LAW

Under the Federal Tort Claims Act, 28 U.S.C. §§ 2871-80, tort liability is governed by the laws of the state where the alleged accident occurred—here, New York. *See Makarova v. United States*, 201 F.3d 110, 114 (2d Cir. 2000). Under New York law, a "property owner may not be held liable for snowy or icy conditions unless it had actual notice, or in the exercise of due care, should have had notice of the conditions, and had a reasonably sufficient time from the cessation of the precipitation to remedy the conditions caused by it." *Tsivitis v. Sivan Assocs., LLC*, 741 N.Y.S.2d 545, 546 (2d Dep't 2002); *Valentine v. City of New York*, 449 N.Y.S.2d 991, 992 (1st Dep't), *aff'd*, 57 N.Y.2d 932 (1982). "However, once a property owner elects to engage in snow removal activities, the owner must act with reasonable care so as to avoid creating a hazardous condition or exacerbating a natural hazard created by the storm." *See Cotter v. Brookhaven Mem. Hosp. Med. Ctr., Inc.*, 947 N.Y.S.2d 608, 609 (2d Dep't 2012).

Before the blizzard ended at approximately 9:30 a.m. on Saturday, February 9, McGovern, defendant's contractor, began snow removal activities in the public parking lot of the

Centerport Post Office. McGovern ceased snow removal efforts that day without applying salt or sand, leaving a layer of ice in the public parking lot. McGovern did not return to the property until the afternoon of Sunday, February 10, after Merlo's slip and fall. Postmaster Grace took no measures regarding the safety of the public parking lot, such as directing salting or sanding or limiting public access, between the time of McGovern's incomplete removal efforts on Saturday and return on Sunday afternoon. Indeed, Postmaster Grace did not inspect the parking lot until Monday, February 11. Under the circumstances, defendant knew or should have known that the incomplete removal efforts and decision not to apply salt or sand or to take other reasonable safety measures before Merlo's incident created a more dangerous condition and exacerbated the natural hazard presented by the blizzard. Nevertheless, the evidence also demonstrates that Merlo's slip and fall was caused, in large part, by his own negligence. Merlo observed the layer of ice in the parking lot as he walked over it and toward the collection boxes, yet he slipped and fell, shovel and letters in hand. Defendant argues that it cannot be liable because the icy condition was open and obvious. Contrary to defendant's argument, the fact that Merlo observed the icy condition bears on his comparative fault but it does not negate defendant's negligence. *See Bradley v. DiPaterio Mgmt. Corp.*, 913 N.Y.S.2d 244, 246 (2d Dep't 2010); *Morgan v. Genrich*, 659 N.Y.S.2d 638, 639 (4th Dep't 1997). The Court concludes that Merlo is 60 percent at fault for his slip and fall and defendant is 40 percent at fault.

### III. CONCLUSION

For the above reasons, Merlo is 60 percent at fault for his slip and fall and defendant is 40 percent at fault. The parties are directed to contact chambers to schedule the damages phase of

the trial.

SO ORDERED.

> _____/s/_____
> LEONARD D. WEXLER
> UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
      March 31, 2016